Eric D. Dean (SBN 56854)
**THE WOLF FIRM, A LAW CORPORATION**
2955 Main Street 2nd Floor
Irvine, California 92614
Telephone: (949) 608-9617
Facsimile: (949) 608-0129
E-Mail: eric.dean@wolffirm.com

Attorneys for Plaintiff and Cross-Claim Defendant
CELTIC BANK CORPORATION, a Utah corporation

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELTIC BANK CORPORATION, a Utah corporation;<br><br>           Plaintiff,<br><br>   v.<br><br>OCEANSIDE AT VINE, LLC, a California limited liability company, OCEANSIDE III, LLC, an entity of unknown origin and nature, MARK MALAN, an individual, and DOES 1 through 50, inclusive, including all persons and entities claiming an interest in the real property hereinafter described.<br><br>           Defendants. | Case No: 13-CV-1059-CAB (BLM)<br><br>**CELTIC BANK CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR RULE 11 SANCTIONS AGAINST MARK MALAN, OCEANSIDE AT VINE, LLC, AND MORGAN A. STEWART, ESQ. AND THE LAW FIRM OF MANLY, STEWART & FINALDI FORMALLY MANLY AND STEWART; DECLARATION OF ERIC D. DEAN IN SUPPORT THEREOF**<br><br>Hearing:<br>Date: November 8, 2013<br>Time: 2:30 p.m.<br>Ctrm: 4C |
| OCEANSIDE AT VINE, LLC, a California limited liability company; MARK MALAN, an Individual;<br><br>          Cross-Claimants,<br>   v.<br>CELTIC BANK CORPORATION, a Utah Corporation; ABILITY MARKETING, an Unknown Entity and ROES 1-100, inclusive;<br><br>        Cross-Claim Defendants. | |

CELTIC BANK CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR RULE 11 SANCTIONS AGAINST MARK MALAN, OCEANSIDE AT VINE, LLC, AND MORGAN A. STEWART; DECLARATION OF ERIC D. DEAN IN SUPPORT THEREOF

8334-2012

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................1

II. FACTS .........................................................................4

    A.    The Loan...............................................................4

    B.    The Lawsuits, And Efforts to Educate Cross-Claimants and
          Thire Counsel  of Their Meritless Claims.............................5

III. ARGUMENT ...................................................................9

    A.    Rule 11 Authorizes this Court to Dismiss the Cross-Claim, Strike
          the Ninth and Sixteenth Affirmative Defenses, and Award Costs
          and Attorneys' Fees Against a Party Who Files and Prosecutes a
          Frivolous Pleading.................................................10

          1. Rule 11's Purpose...............................................10

          2. Sanctions Under Rule 11.........................................11

          3. The Reasonableness Standard.....................................12

    B.    The Cross-Claim and Ninth and Sixteenth Affirmative Defenses
          Have No Legal Basis...............................................13

          1. Celtic's Qualification to do Business in California in
             January, 2007 is Irrelevant Because it Was Qualified to
             Do Business Years Before Celtic Filed the Instant
             Lawsuit.......................................................14

          2. Cross-Claimants Cannot Maintain any Affirmative Claims
             for Damages Arising out of Celtic's "Failure" to Qualify to
             Do Business in California and the Cross Claim Fails to State
             A Claim as a Result............................................16

          3. Celtic was not Transacting "Intrastate Business" when it
             made the Loan to OCV..........................................18

          4. Celtic was Exempt from the Requirement that it
             Qualify to do Business in California at the Time the
             Loan was Made ................................................20

5.  Even if the Underlying Loan was Void or Voidable,
    Defendants Signed a Change in Terms Agreement in
    2010 Ratifying and Adopting Their Loan Obligations
    and the Loan Documents As of That Date............................21

6. All Cross-Claimants' Claims are Barred by the
   Applicable Statute of Limitations.........................................22

IV. CONCLUSION ...........................................................................24

# TABLE OF AUTHORITIES:

Federal Rules

Fed. R. Civ. P. 11(a), (b)(2). ..................................................................... 10

Fed. R. Civ. P. Rule 11(b)(2)................................................................... 10,13

Fed. R. Civ. P. Rule 11(b)(3)...................................................................... 10

Fed. R. Civ. P. Rule 11(c)(1)...................................................................... 11

Fed. R. Civ. P. Rule 11(c)(4)...................................................................... 11


State Statutes

Cal. Bus. & Prof. Code § 17200 ................................................................. 23

Cal. Bus. & Prof. Code § 17208 ................................................................. 23

Cal. Corp. Code § 191(c)(7)................................................................... 20,21

Cal. Corp. Code § 191(d)....................................................................... 20,21

Cal. Corp. Code § 2105............................................................................. 14

Cal. Corp. Code §  2203(c)..................................................................... 14,15

Cal. Corp. Code § 6203............................................................................. 18

Cases

*Business Guides, Inc. v. Chromatic Communications Enters., Inc.,*
    498 U.S. 533, 540 (1991). ................................................................... 11

*Buster v. Greisen,* 104 F.3d 1186, 1190 (9th Cir. 1997) ........................... 12

*Capital Gold Group v. Nortier,* 176 Cal.App.4[th]
    1119(2009)............................................................................................ 15,17

*Carman v. Treat,* 7 F.3d 1379, 1382 (8th Cir. 1993). ............................... 11

*Christian v. Mattel, Inc.,* 286 F.2d 1118, 1127 (9th Cir. 2002)................... 10,12

*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393 (1990)................... 10,12

*David Welch Co. v. Erskine & Tulley* (1988) 203 Cal.App.3d 884, 893)............ 23

*Dow v. River Farms Co. of California,* 110 Cal.App.2d 403, 410 (1952) ..................................................................................................22

*Fox v. Ethicon Endo-Surgery, Inc,.* 35 Cal.4th 797, 807 (2005)..............................23

*G.C. and K.B. Investments, Inc. v. Wilson,* 326 F.3d 1096, 1109 (9th Cir. 2003)..................................................................................................12

*General Credit Corp. v. Pichel,* 44 Cal.App.3d 844, 848 (1975) ...........................22

*Hurst v. Buczek Enterprises, LLC,* 870 F.2d 810, 819 (N.D. Cal. 2012)..................................................................................................18

*Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1110 (1988); ............................................23

*Kline v. Turner,* 87 Cal.App.4th 1369 (2001) ...........................................................24

*LeBlanc Nutritions Inc. v. Advanced Nutra LLC,* WL 1398538 (E.D. Cal. June 14, 2005)....................................................................................16

*Meadow Ltd. Partnership v. Heritage Sav. & Loan Assoc.,* 118 F.R.D. 432, 434 (E.D. Va. 1987); .............................................................11

*MFC Twin Builders, LLC v. Fajardo,* 2012 U.S. Dist. LEXIS 126201 (E.D. Cal. Sept. 4, 2012)...........................................................................12

*Moradi-Shalal v. Fireman's Fund Ins. Companies* 46 Cal.3d 287, 305 (1988)..................................................................................................23

*Orange Production Credit Assn. v. Frontline Ventures, Ltd.,* 792 F.2d 797 (9th Cir. 1986)..................................................................................11

*Parsons v. Tickner,* 31 Cal.App.4th 1513, 1525 (1995)..........................................23

*Perlas v. MERS,* 2010 WL 3079262 (N.D. Cal. 2010) ......................................16,18

*Thorner v. Selective Cam Transmission Co.,* 180 Cal.App.2d 89 (1960) .................................................................................................18,21

*United Medical Management, Ltd. v. Gatto,* 49 Cal.App.4th 1732 (1996). ..................................................................................................14

*Ventura County National Bank v. Macker* (1996) 49 Cal.App.4th 1528, 1531)..................................................................................................23

*Woodfork By and Through Houston v. Gavin,* 105 F.R.D. 100, 104 (D.C. Miss. 1985)....................................................................................11

*XTC Investments, LLC v. Bluenose Trading, Inc.,* 2011 WL 3132102 (Cal. App. 2011)......................................................................................19

*Yagman v. Republic Ins.,* 987 F.2d 622, 628 (9th Cir. 1993). .................................12

*Zaldivar v. City of L.A.,* 780 F.2d 823, 831 (9th Cir. 1986),....................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Action was filed on May 3, 2013 by Plaintiff Celtic Bank ("Celtic"). The Complaint seeks remedies as to a matured loan (the "Loan") made in January, 2007 by Celtic to Defendant and Cross-Claimant Oceanside at Vine, LLC ("OCV"), and guaranteed by Defendant and Cross-Claimant Mark Malan ("Malan," sometimes together, "Cross-Claimants").

On May 6, 2013, Morgan Stewart Esq. ("Stewart") filed a lawsuit in the Orange County Superior Court against Celtic on behalf of OCV and Malan entitled *Oceanside At Vine and Mark Malan v. Celtic Bank Corporation*, Orange County California Superior Court Case No. 30-2013-000647881 ("State Court Case"). The State Court Case was based on exactly the same theories as the Cross-Claimants' Cross-Claim, and the Ninth and Sixteenth Affirmative Defenses filed by them in this Action.

When Celtic was served with the State Court Case, counsel for Celtic wrote a letter to Stewart demanding that the Action be dismissed as the allegations in the Complaint in the State Court Case were contrary to established precedent, and did not otherwise state a cause of action, and because the Action filed by Celtic was already pending and was filed first. (*See* Declaration of Eric D. Dean ("Dean Decl."), ¶ 5, and Exhibit "1" thereto.). After the letter was sent, counsel for Celtic, Eric Dean ("Dean"), and Stewart met and conferred and Stewart filed a dismissal of the State Court Action on June 11, 2013.

However, on that same date, Stewart as counsel for Malan and OCV filed an Answer including the Ninth and Sixteenth Affirmative Defense and the Cross-Claim in this Action. Like the prior State Court Complaint Stewart had filed, the two Affirmative Defenses and the Cross-Claim were based entirely upon the same wholly unfounded legal theory, in direct contradiction of established California

CELTIC BANK CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR RULE 11 SANCTIONS AGAINST MARK MALAN, OCEANSIDE AT VINE, LLC, AND MORGAN A. STEWART; DECLARATION OF ERIC D. DEAN IN SUPPORT THEREOF

8334-2012

1    statutory and case law, and barred by the statute of limitations since the Loan was

2    made in January, 2007. Because the two Affirmative Defenses and the Cross-

3    Claim are legally unsupportable, and Stewart has insisted on pursuing these claims

4    and threatened Celtic with expansive and intrusive discovery on the issue (*see e.g.*,

5    Joint Rule 26(f) Discovery Stipulation filed on August 14, 2013), it can only be

6    concluded that these Affirmative Defenses and Cross-Claim were pled and are

7    being prosecuted for purposes of delay and harassment in an effort to force Celtic

8    to negotiate its rightful claims, when in fact there are no defenses to such claims.

9       This conclusion is buttressed by the fact that on June 11, 2013, Stewart as

10    counsel for Cross-Claimants prematurely and wrongfully served burdensome,

11    intrusive, and broadly defined written discovery seeking information on other,

12    unrelated, loans made by Celtic. The written discovery was withdrawn by Stewart

13    on June 13, 2013, but only under threat from Dean that Celtic would seek Court

14    intervention and sanctions if the discovery was not withdrawn. (*See* Dean Decl., ¶

15    6, and Exhibit "2" thereto.)

16       The Loan had matured in 2010 and was extended by Celtic at Cross-

17    Claimants' request. When the maturity date of the Loan was extended, OCV and

18    Malan ratified all loan documents and all loan terms and acknowledged their debt

19    to Celtic. The Loan matured again in February, 2013 and has been all due and

20    payable since that time. The underlying facts as to the Loan are all admitted in

21    Defendants' Answer to the Complaint, as well as in a Statement of Undisputed

22    Facts for All Purposes entered into by the Parties. (Dean Decl., ¶ 7, and Exhibits

23    "3" and "4" thereto.) Accordingly, the only contested issue in this Action is

24    Cross-Claimants' claim that Celtic cannot enforce the Loan Documents or collect

25    the outstanding Loan balance because Celtic had not registered to do business in

26    California in January, 2007 when the Loan was made and funded. This is despite

27    the fact that Stewart and Cross-Claimants admit that Celtic had registered to do

28

1  business in California on December 17, 2007.  (*See* Stipulated Statement of

2  Undisputed Facts For All Purposes, a true and correct copy of which is attached as

3  Exhibit "4" to the Dean Declaration.)

4      The Cross-Claim and Ninth and Sixteenth Affirmative Defenses not only

5  ignore long standing and clearly enumerated provisions of the *California*

6  *Corporations Code* and case law, but Cross-Claimants offer no explanation for

7  their delay in bringing these supposed claims (which are time-barred) and

8  Affirmative Defenses, nor do Cross-Claimants' allegations indicate that they are

9  ready and willing to tender the amounts due Celtic.

10      The Cross-Claim and Ninth and Sixteenth Affirmative Defenses are

11  particularly specious because if Cross-Claimants were genuinely concerned about

12  whether Celtic had registered to do business in California, this information could

13  have been ascertained by them in less than five minutes via the California

14  Secretary of State website at any time before or after the Loan was made. The

15  Court is requested to take Judicial Notice of the website; that it is and was

16  accessible to the general public in and around January, 2007 and that in and around

17  January, 2007, Cross-Claimants could have ascertained whether Celtic was

18  registered to do business in California by accessing the website.

19      Sanctions are mandated against Cross-Claimants, and particularly against

20  their counsel, Stewart, and his law firm under Rule 11 of the Federal Rules of Civil

21  Procedure as the Cross-Claim and Ninth and Sixteenth Affirmative Defenses in

22  question asserted against Celtic in this Action are not legally supportable under

23  existing law, are without any legal or factual foundation, and are time-barred.

24  Moreover, Cross-Claimants are using these specious defenses as a justification for

25  not making an offer to tender in an effort to force a favorable resolution of this

26  case through such things as serving improper written discovery, and threatening

27

28

CELTIC BANK CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR RULE 11 SANCTIONS AGAINST MARK MALAN, OCEANSIDE AT VINE, LLC, AND
MORGAN A. STEWART; DECLARATION OF ERIC D. DEAN IN SUPPORT THEREOF
8334-2012

1    broad and inappropriate inquiries into other loans made by Celtic unrelated to

2    Cross-Claimants.

3         Accordingly, *Celtic* respectfully requests that the Court sanction Cross-

4    Claimants, their counsel Stewart, and his law firm by: (1) ordering them, on a joint

5    and several basis, to pay the attorneys' fees and expenses Celtic and its attorneys

6    have incurred as to its Motion to Dismiss, Motion to Strike, and Rule 26 Joint

7    Statement of Counsel as it relates to the Cross-Claim, the fees related to the

8    improperly served discovery by Cross-Claimants, and this Motion for Sanctions,

9    all filed or served in this action and referenced in the Dean Declaration.

10   **FACTS**

11        **A.     The Loan**

12        The undisputed facts in this Action are established both by the Answer to the

13   Complaint and the Parties Stipulation of Undisputed Facts For All Purposes.

14   (Exhibit "4" to Dean Declaration).

15        On January 9, 2007, over six (6) years before the instant action was filed,

16   Celtic made a business and commercial loan to OCV in the original principal

17   amount of $825,000.00 ("Loan"). (Cross-Claim, Exhibits 1, 2, 3; Answer, ¶ 12.)

18   The Loan was, and is, evidenced by, among other things: a Promissory Note

19   ("Note"), and Business Loan Agreement ("BLA"), both dated January 9, 2007, and

20   executed by Defendant and Counter-Claimant Malan. (Cross-Claim, Exhibits 1, 2;

21   Answer, ¶¶ 12, 13.)

22        In addition, OCV caused Malan to execute and deliver a Commercial

23   Guaranty to Celtic whereby Malan agreed to be personally liable for all defaults by

24   OCV on its obligations under the Loan ("Guaranty"). (Cross-Claim, Exhibit 3.)

25   Cross-Claimants admit that no payments have been made on the Loan since

26   January 15, 2013, and that the Loan matured on February 5, 2013 and is all due

27   and payable by its terms. (Answer, ¶¶ 12, 15, 16; *see also* Stipulation re

28

1   Undisputed Facts For All Purposes entered into by Plaintiff and Cross-Claimants

2   as part of the Joint Rule 26(f) Stipulation, a true and correct copy of which is

3   attached to the Dean Declaration as Exhibit "4" and was lodged herein on August

4   14, 2013.)

**B.   The Lawsuits, And Efforts to Educate Cross-Claimants and Their**
**Counsel of Their Meritless Claims**

7   On May 3, 2013, Celtic initiated this action by filing a complaint against

8   OCV, Malan, and Oceanside at Vine III, based on, *inter alia*, OCV's failure to pay

9   the Loan at maturity, and Malan's default under the Guaranty ("Complaint").

10   On May 6, 2013, Cross-Claimants through counsel Stewart filed a complaint

11   in state court against Celtic asserting six causes of action: (1) Violation of

12   California Corporations Code Section 191; (2) Breach of Fiduciary Duty; (3)

13   Fraudulent Inducement; (4) Negligent Misrepresentation; (5) Violation of Business

14   and Professions Code Section 17200; and (6) Declaratory Relief ("State Court

15   Complaint").  The entire State Court Complaint was related to the Loan and based

16   on the same subject matter as Celtic's Complaint in this Action.

17   On May 21, 2013, counsel for Celtic, Eric Dean, wrote counsel for Cross-

18   Claimants (Stewart) and explained that the State Court Complaint must be

19   dismissed because of the pending federal action involving the same Loan

20   transaction.  The letter also explained in detail that the State Court Complaint was

21   without any factual or legal basis, and its continued prosecution would constitute

22   sanctionable conduct.  This correspondence also informed Counsel Stewart that

23   Celtic planned to move for sanctions in the Superior Court Case if the baseless

24   Complaint was not voluntarily dismissed.  (*See* Dean Decl., ¶ 5, and Exhibit "1"

25   thereto.)

26   On June 7, 2013, Celtic's counsel (Dean) exchanged several e-mails with

27   counsel for Cross-Claimants, again stating that the State Court Complaint was

28

1  groundless, and that Celtic would seek sanctions against Stewart and his firm and

2  clients if the State Court Complaint continued to be pursued.  (Dean Decl., ¶ 8, and

3  Exhibit "5" thereto).

4       On June 11, 2013, Stewart, on behalf of Cross-Claimants, improperly served

5  Written Interrogatories and a Request for Production of Documents in this Action

6  on Celtic before the Parties had an opportunity to meet and confer under Rule 26.

7  Dean, on behalf of Celtic, made written demand on Stewart to withdraw this

8  discovery, informing Stewart that sanctions and a protective order would be sought

9  if he failed to do so.  After further discussions, Stewart finally agreed to withdraw

10  the discovery that he had served.  The discovery was solely as to loans other than

11  the OCV Loan made by Celtic and was overbroad and harassing in nature beyond

12  being procedurally improper.  (*See* Dean Decl., ¶ 6, and Exhibit "2," thereto.)

13       On June 11, 2013, Cross-Claimants dismissed the State Court Complaint

14  without prejudice.  Also on this date, Cross-Claimants filed an answer and Cross-

15  Claim to Celtic's Complaint in this Action ("Answer").  The Answer admitted all

16  material factual allegations of the Complaint as to the Loan and Loan defaults.

17  The Answer also included Affirmative Defenses for "Violation of Corporations

18  Code" (ninth affirmative defense) and for "Illegality" (sixteenth affirmative

19  defense.)  Both these Affirmative Defenses and the Cross-Claim were based

20  entirely on the bad faith contention that because Celtic was not registered to do

21  business in California in January, 2007 (when the Loan was made) and did not

22  register to do business in California until December, 2007, the Loan was voidable

23  or void and OCV did not have to repay the Loan and Celtic could not enforce the

24  Malan Guaranty.  The Cross-Complaint did not offer to tender amounts justly due

25  Celtic, nor reference such a tender having been made.

26       Further, despite having reaffirmed the January, 2007 Loan and Loan

27  Documents when a multi-year extension of the Loan Maturity date was granted by

28
CELTIC BANK CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR RULE 11 SANCTIONS AGAINST MARK MALAN, OCEANSIDE AT VINE, LLC, AND
MORGAN A. STEWART; DECLARATION OF ERIC D. DEAN IN SUPPORT THEREOF
8334-2012

1    Celtic in 2010, Cross-Claimants contended that the statute of limitations had not

2    run on their claims because they had not discovered that Celtic was not registered

3    to do business in California in January, 2007 until some unstated date.  Cross-

4    Claimants made this contention despite the fact that such information was readily

5    and easily discoverable from the California Secretary of State website at any time

6    they chose to look, and ignores Cross-Claimants' admission that Celtic registered

7    to do business in California on December 17, 2007.  (*See* Dean Declaration,

8    Exhibit "4." And Cross-Claim, ¶ 12.)

9         Like the State Court Complaint, the Cross-Claim is founded on a single

10   universal and untenable allegation: that Celtic was not authorized to transact

11   business in California in January, 2007 because it had not registered to do business

12   in the state when it made the Loan to OCV, and, according to Cross Claimants, the

13   BLA, the Note, and the Guaranty were and are void or voidable and both OCV and

14   Malan are not required to repay Celtic the hundreds of thousands of dollars

15   borrowed and to date not repaid.  (Cross-Claim, ¶¶ 2, 11, 23, 28, 33, 41, 47, 52.)

16   However, the admissions contained in the Answer fully undercut the viability of

17   the Cross-Claim and further demonstrate its frivolous nature, in violation of Rule

18   11. For example, Cross-Claimants admit that:

19        • Celtic is and was a bank incorporated under the laws of the State of
            Utah (Answer, ¶ 1);  (The Answer is attached to Celtic's Request for
20          Judicial Notice ("RJN") as Exhibit 1.  Celtic's Complaint is attached
            to the RJN as Exhibit 2.)
21        • OCV applied for a loan from Celtic offering various rental properties
22          located in San Diego County, California, as security for the proposed
            loan (Answer, ¶ 10);
23        • On January 9, 2007, over six years before the Counter Claim was
24          filed, OCV borrowed $825,000.00 from Celtic.  This was a business
            loan (Answer, ¶ 12);
25        • To document the loan, Malan as manager of OCV signed loan
26          documents and security instruments in the name of OCV (Answer, ¶¶
            13 and 14);
27

28

- The loan documents and security instruments that were executed in 2007, each reflect that Celtic is a Utah corporation (*See, e.g.,* Exhibits "5", "6", "8" and "9" to the Exhibit 2 to the RJN.);
- In 2007, Malan also executed a personal guaranty of the obligations of OCV to Celtic (Answer, ¶ 15), which reflects that Celtic is a Utah corporation (Exhibit "10" to the Complaint; RJN, Exhibit 2);
- The 2007 loan matured without payment being made (Answer, ¶ 16);
- Demand was then made on Cross-Claimants by Celtic (Answer, ¶ 18);
- Celtic holds a vested and perfected security interest in the collateral for the loan made by OCV from Plaintiff (Answer ¶ 30); and
- Cross-Claimants also admit the 2010 extension of the Loan Maturity date through February 5, 2013, and concurrent ratification of the Loan Documents and Loan Terms, and Celtic's registering to do business in California on December 17, 2007. (Dean Decl., Joint Statement of Undisputed Facts For all Purposes, Exhibit "4.")

The day after receiving the Answer and Cross-Claim, Celtic's counsel (Dean) again wrote to Stewart stating that the Cross-Claim against Celtic (which is identical to the State Court Complaint) must be withdrawn and is without legal or factual foundation. (Dean Decl., ¶ 11.) Stewart rejected this request and the Cross-Claim has not been withdrawn. On June 18, 2013, counsel for the Parties met and conferred by phone and a similar demand was made by counsel for Celtic and rejected by counsel for Cross-Claimants. (*See* Dean Decl., ¶12.) Rather than acknowledge the law, Stewart continued in his threatened intention to conduct burdensome and intrusive and irrelevant discovery and filed an Opposition to Plaintiff's Motion to Strike and Motion to Dismiss. (*See* Joint Rule 26(f) Stipulation and Cross-Claimants' Opposition filings as Dkt Nos. 12, 13.)

On August 22, 2013, Stewart again propounded a Request for Production of Documents and Written Interrogatories on behalf Cross-Claimants. The discovery served is nearly identical to the discovery improperly served by Cross-Claimants on June 11, 2013. Like the earlier served set, the discovery requests are burdensome, intrusive, broadly defined, and directed to other loans made or

1  considered by Celtic in California.  The same day, counsel for Celtic, on behalf of
2  Celtic, made written demand on Stewart to withdraw this discovery, in that all the
3  issues that are the subject of the Requests for Production have been admitted by
4  Counter-Claimants' through their Answer and Statement of Stipulated Facts.
5  Stewart rejected the request.  Celtic's counsel then informed Stewart that this
6  Motion would forthcoming if Stewart and Cross-Claimants maintained their
7  position despite overwhelming authority to the contrary. (*See* Dean Decl., ¶¶ 14,
8  15, and Exhibits "7," "8," and "9" thereto.)

9        In sum, from the outset of Cross-Claimants' litigation against Celtic on May
10  6, 2013, Celtic's counsel has repeatedly tried to educate Stewart as counsel for
11  Cross-Claimants that the Cross-Claims and Ninth and Sixteenth Affirmative
12  Defenses lacked any possible merit.  For example, on May 21, 2013, Celtic set
13  forth in detail why the claims were without reasonable basis in law or fact, and
14  demanded their dismissal.  (Dean Decl., Exhibit "1".)  Counsel for Cross-
15  Claimants refused.  Cross-Claimants then dismissed the State Court Complaint
16  only to re-file an identical action against Celtic in the form of the Cross-Claim.
17  Thereafter, Celtic again informed Stewart that the Cross-Claim had no basis in law,
18  but, to date, Stewart has refused to withdraw the frivolous Cross-Claim and
19  announced an intention to take an aggressive posture on these legally
20  unsupportable issues.  Accordingly, Celtic brings this Motion.

21  **II.   ARGUMENT**

22        As discussed herein, the Cross-Claim against Celtic has no basis in fact or
23  law.  Rule 11 of the Federal Rules of Civil Procedure expressly prohibits the filing
24  (and continued prosecution and threats to serve written discovery and deposition
25  notices and motions) of what is clearly a frivolous Cross-Claim and Affirmative
26  Defenses.  Rule 11 authorizes this Court to sanction Cross-Claimants and their
27  Counsel by: (1) ordering them to reimburse Celtic and its attorneys for the fees and

28

1    expenses incurred in defending Cross-Claimants' frivolous Cross-Claim since they

2    were put on written notice of their claims' lack of merit starting as early as May

3    21, 2013; and (2) dismissing or striking the frivolous pleadings.

4    **A.     Rule 11 Authorizes this Court to Dismiss the Cross-Claim, Strike**

5    **the Ninth and Sixteenth Affirmative Defenses, and Award Costs**

6    **and Attorneys' Fees Against a Party Who Files and Prosecutes a**

7    **Frivolous Pleading**

8    **1.     Rule 11's Purpose**

9    The purpose of Rule 11 is to deter dilatory or abusive litigation tactics, as

10   well as to streamline litigation by excluding baseless filings. *Cooter & Gell v.*

11   *Hartmarx Corp.*, 496 U.S. 384 (1990).  To accomplish this purpose, an attorney

12   who signs and files a pleading with the court certifies that "to the best of the

13   person's knowledge, information, and belief, formed after an inquiry reasonable

14   under the circumstances, . . . the claims, defenses, and other legal contentions are

15   warranted by existing law or by a non-frivolous argument for extending,

16   modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P.

17   11(a), (b)(2).  The attorney also certifies that "the factual contentions have

18   evidentiary support." Fed. R. Civ. P. 11(b)(3).

19   To discharge his or her obligation under Rule 11(b), the attorney has a duty

20   prior to filing a complaint not only to conduct a reasonable factual investigation,

21   but also to perform adequate legal research that confirms whether the theoretical

22   underpinnings of the complaint are "warranted by existing law or a good faith

23   argument for the extension, modification or reversal of existing law." *Christian v.*

24   *Mattel, Inc.,* 286 F.2d 1118, 1127 (9th Cir. 2002).  Thus, "[a] signature certifies to

25   the court that the signer has read the document, has conducted a reasonable inquiry

26   into the facts and the law and is satisfied that the document is well grounded in

27

28

CELTIC BANK CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR RULE 11 SANCTIONS AGAINST MARK MALAN, OCEANSIDE AT VINE, LLC, AND
MORGAN A. STEWART; DECLARATION OF ERIC D. DEAN IN SUPPORT THEREOF
8334-2012

both, and is acting without improper motive." *Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 540 (1991).

Not only does Rule 11 aim at preventing the "sue now, inquire later," mentality, but it also imposes upon attorneys a continuing duty to review, reexamine, and reevaluate their position as the facts of the case come to light. *See, e.g., Meadow Ltd. Partnership v. Heritage Sav. & Loan Assoc.*, 118 F.R.D. 432, 434 (E.D. Va. 1987); *Woodfork By and Through Houston v. Gavin*, 105 F.R.D. 100, 104 (D.C. Miss. 1985).

### 2. Sanctions Under Rule 11

Where a violation is found, Rule 11 permits a court wide discretion to impose "an appropriate sanction" on an attorney or party that is responsible for the violation. Fed. R. Civ. P. Rule 11(c)(1); *Cooter & Gell, supra*, 496 U.S. at 400. Included in that discretion is the ability to dismiss the Cross-Claim and strike the frivolous and unsupportable Affirmative Defenses, especially where there is no evidence or legal basis for the claims asserted. *Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993). Moreover, imposition of sanctions under Rule 11 on the grounds that an action or claim is presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, does not require a subjective finding of bad faith. *Orange Production Credit Assn. v. Frontline Ventures, Ltd.*, 792 F.2d 797 (9th Cir. 1986).

Instead, sanctions under Rule 11 are appropriate when a claim is objectively frivolous, *i.e.*, no competent lawyer would file the pleading. The test may be satisfied by analysis of an attorney's entire course of conduct in the litigation. *Id.* In addition, the court may "[direct] payment to the movant of a part or all of the reasonable attorneys' fees and other expenses directly resulting from the violation." Fed. R. Civ. P. Rule 11(c)(4). That is, sanctions for violating Rule 11

1  (b)'s certification requirement may ". . .include payment of the other parties'
2  expenses." *Cooter v. Gell*, 496 U.S. at 393.

3  　　Here, Celtic seeks recovery of all fees incurred since May 21, 2013, when it
4  put Cross-Claimants and Counsel on notice that their allegations were without
5  legal or factual merit. (Dean Decl., ¶4, Exhibit "1.")

6  　　　　　　**3.    The Reasonableness Standard**

7  　　Where, as here, a party's pleading is the primary focus of a Rule 11 motion,
8  "a district court must conduct a two-prong inquiry to determine (1) whether the
9  complaint is legally or factually 'baseless' from an objective perspective, and (2) if
10 the attorney has conducted 'a reasonable and competent inquiry' before signing
11 and filing it." *Christian*, 286 F.3d at 1127 (quoting *Buster v. Greisen*, 104 F.3d
12 1186, 1190 (9th Cir. 1997)). An objective standard of reasonableness is applied to
13 determine whether a litigant has met his Rule 11 duties. *See G.C. and K.B.*
14 *Investments, Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003). Counsel's
15 subjective belief in the propriety of the pleading is irrelevant in determining if Rule
16 11 has been violated. *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993).

17 　　Under the objective test of reasonableness, the court considers whether a
18 competent attorney would have a good faith argument for the legal theory
19 advanced after a reasonable inquiry into the facts and the law. *Zaldivar v. City of*
20 *L.A.*, 780 F.2d 823, 831 (9th Cir. 1986), abrogated on other grounds, *Cooter &*
21 *Gell*, 496 U.S. at 399. The fact that an attorney may have conducted a reasonable
22 amount of legal research does not satisfy the requirements of Rule 11 if the
23 conclusion drawn from the research is itself indefensible. *Zaldivar*, 780 F.2d at
24 831; *MFC Twin Builders, LLC v. Fajardo*, 2012 U.S. Dist. LEXIS 126201 (E.D.
25 Cal. Sept. 4, 2012).

26

27

28

1    As shown below, both the Ninth and Sixteenth Affirmative Defenses and

2  Cross-Claim are frivolous and indefensible in multiple respects and the imposition

3  of sanctions under Rule 11 is appropriate.

4    **B.    The Cross-Claim and Ninth and Sixteenth Affirmative Defenses**

5       **Have No Legal Basis**

6    Cross-Claimants and Counsel violated Rule 11 because the Cross-Claim is

7  not "warranted by existing law or by a non-frivolous argument for extending,

8  modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P.

9  Rule 11(b)(2). Even assuming, for sake of argument, that counsel Stewart made a

10  "reasonable and competent inquiry" before signing and filing the Cross-Claim,

11  there is no question that Stewart's decision to continue to pursue the claims against

12  Celtic—even after learning their claims have no factual or legal basis – and his

13  overt threats of aggressive and expansive discovery and the filing of motions on

14  these frivolous issues—constitutes a violation of Rule 11. Dismissal and monetary

15  sanctions are warranted.

16    Here, Cross-Claimants allege that Celtic operated in California "without first

17  registering as a foreign corporation." (Cross-Claim, ¶¶ 20, 22.) Because of these

18  alleged deficiencies in Celtic's ability to conduct business in California, Cross-

19  Claimants allege that Celtic could not "prepare or execute" the BLA, the Note, or

20  the Guaranty, and thus that the contracts "by their terms are void or voidable."

21  (Cross-Claim, ¶ 23.) This argument, upon which all Cross-Claimants' claims for

22  relief fully depend finds no support in California statutory law.

23    As discussed in detail below, there is no support for the allegation that Celtic

24  could not properly "prepare or execute" any of the Loan Documents, and

25  allegations that these documents are purportedly void or voidable and that OCV as

26  borrower and Malan as Guarantor have no obligation to tender any portion of the

27  unpaid loan balance as alleged by Cross-Claimants are meritless. Accordingly, all

28

1   Cross-Claimants' claims for relief are indefensible and any reasonable level of

2   research should have caused counsel Stewart to reach this conclusion

3   independently.  But, if not, this conclusion certainly should have been reached after

4   demand was made on Stewart to dismiss the Cross-Claim he caused to be filed.

### 1.   Celtic's Qualification to do Business in California in January, 2007 is Irrelevant Because it Was Qualified to Do Business Years Before Celtic Filed the Instant Lawsuit

8   *Corporations Code* section 2105 provides that a foreign corporation shall

9   not transact intrastate business in California without first having obtained a

10  certificate of qualification from the Secretary of State.  *Corporations Code* section

11  2203(c) further provides, in relevant part, that, "A foreign corporation subject to

12  the provisions of Chapter 21 (commencing with Section 2100) which transacts

13  intrastate business without complying with Section 2105 shall not maintain any

14  action or proceeding upon any intrastate business so transacted in any court of this

15  state, *commenced prior to compliance with Section 2105,* until it has complied with

16  the provisions thereof . . . ."  (Emphasis added.)  Under this provision, a foreign

17  corporation transacting intrastate business without taking the necessary steps to

18  qualify to do business in California cannot maintain any action or proceeding upon

19  this intrastate business but *only* until it is properly qualified to do business in

20  California at which time it can fully peruse its remedies regardless of whether the

21  transaction in question was entered into before or after the foreign corporation

22  qualified to do business in the State.

23        In order to establish that a foreign corporation is not entitled to maintain suit,

24  a defendant has the burden of establishing that the action: (1) arose out of the

25  transaction of intrastate business by a foreign corporation; and (2) the action was

26  commenced by the foreign corporation prior to qualifying to transact intrastate

27  business.  *United Medical Management, Ltd. v. Gatto,* 49 Cal.App.4[th] 1732 (1996).

28

1  If a corporation is qualified to do business at the time it files suit, such as was the

2  case with Celtic here, its previous failure to qualify is <u>irrelevant</u>:

> If the necessary steps are taken for qualification prior to the time when an objection is raised as to the status of the foreign corporation as a qualified litigant, *the objection cannot thereafter be asserted*, for the statute relates merely to the maintenance of an action and does not disqualify the corporation from commencing an action.

7  15 Cal. Jur. 3d *Corporations* §225 (emphasis added).

8  Thus, in *Capital Gold Group, Inc. v. Nortier*, 176 Cal.App.4th 1119 (2009),

9  the Court outlined the penalties imposed on foreign corporations who fail to

10  register in California, noting that, "section 2203(c) has no application to an action

11  by a foreign corporation qualified to transact intrastate business in California at the

12  time the action was commenced." *Id*. The Court in *Gatto*, *supra*, held similarly.

13  In that case, the trial court dismissed a claim by a foreign corporation against a

14  California company because, even though it had qualified to do business in

15  California before filing suit (but after it entered into the contract at issue), it had

16  failed to provide proof of payment of state taxes as required by *Corporations Code*

17  section 2203(c). The Court of Appeal reversed, finding that even though the

18  plaintiff was not qualified to do business when it entered into the contract, it had

19  qualified before commencing the lawsuit and that was all that was required. *Id*. at

20  1740.

21  Here, Cross-Claimants admit in their Cross-Claim that Celtic qualified to do

22  business many years before Celtic filed the instant lawsuit. (Cross-Claim, ¶ 12.)

23  The Cross-Claim and Ninth and Sixteenth Affirmative Defenses were brought by

24  Malan and OCV, and Stewart, despite having this information prior to the filing of

25  the Cross-Claim. Accordingly, as Cross-Claimants have admitted that Celtic was

26  qualified to business prior to the filing of the lawsuit, the issue of whether Celtic

27

28

CELTIC BANK CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR RULE 11 SANCTIONS AGAINST MARK MALAN, OCEANSIDE AT VINE, LLC, AND
MORGAN A. STEWART; DECLARATION OF ERIC D. DEAN IN SUPPORT THEREOF
8334-2012

1   was qualified to do business in California when it made the loan is irrelevant to its

2   enforcement of the Loan and Guaranty.

3         **2.**      **Cross-Claimants Cannot Maintain any Affirmative Claims**

4                     **for Damages Arising out of Celtic's "Failure" to Qualify to**

5                     **Do Business in California and the Cross Claim Fails to State**

6                     **A Claim as a Result**

7   Where a party initiates or seeks to maintain an action before qualifying to do

8   business in California, a defendant's <u>sole</u> remedy is to seek to abate or dismiss the

9   case based on a lack of standing. *LeBlanc Nutritions Inc. v. Advanced Nutra LLC*,

10  WL 1398538 (E.D. Cal. June 14, 2005). The *Gatto* Court explained the remedy for

11  a failure to qualify:

12  > The failure to qualify to transact business prior to commencing an
13  > action is a matter of abatement. Once a nonqualified foreign
    > corporation commences an action regarding intrastate business, the
14  > defendant may assert by demurrer or as an affirmative defense in the
    > answer the lack of capacity to *maintain* an action arising out of
15  > intrastate business. This abatement procedure enables the foreign
    > corporation to obtain a judicial determination as to whether it is in fact
16  > transacting intrastate business. . . . If the defendant establishes the bar
    > of the statute, then the foreign corporation plaintiff must comply with
17  > section 2203(c). Ordinarily, the matter should be stayed to permit the
    > foreign corporation to comply. If the foreign corporation plaintiff
18  > complies with section 2203(c) by qualifying and paying fees, penalties
    > and taxes, it may maintain the action. If the foreign corporation fails
    > to comply, the matter should be dismissed without prejudice."
19

20  *Gatto* at 1740 (emphasis in original.)

21  The Court specifically noted that even if a case were to be dismissed on that

22  basis, a corporation is free to file a subsequent action once it has qualified. The

23  fact that a party lacks standing pending registering to do business in the State is the

24  <u>only</u> consequence of a failure to qualify. There is not a single case or statute in

25  California giving the other party a right to recover <u>damages</u>. Indeed, the Court in

26  *Perlas v. MERS*, 2010 WL 3079262 (N.D. Cal. 2010), specifically addressed this

27  issue. In that case, the defendant claimed MERS was ineligible to conduct

28

business in California by virtue of its failure to register with the Secretary of State. The Court discussed the requirement that a foreign corporation qualify to do business in California and the remedies available to a defendant sued by a foreign corporation that has failed to do so.

> The Court held:
>
> . . . even assuming MERS was obligated to register with the state, its failure has not caused any injury to plaintiffs. ***There is no authority for the argument that because MERS was unregistered, its contractual obligations are void.*** In other words, the fact that MERS was unregistered does not make its foreclosing activities illegal, and therefore the failure to register did not itself cause any harm to Plaintiffs.

*Id.* at \*1 (emphasis added).

The Court also held, ". . . there is no basis upon which to conclude that Defendants' violation of the statute harmed Plaintiffs. And because they have not been harmed, Plaintiffs have no claim. . . ." *Id.* at \*6. *See also Capital Gold Group v. Nortier,* 176 Cal.App.4th 1119(2009) (noting that the purpose of the qualification requirements under California law are to compel compliance – not to penalize a failure to qualify.)

The *Gatto* Court also reiterated the rule that a lack of qualification <u>does not</u> render a contract entered into before qualification illegal in any respect. To the contrary, upon registering to do business in California, a previously unregistered corporation, "<u>is restored to full legal competency and [has] its prior transactions given full effect.</u>" *Id.* at 1741. (Emphasis added.) As a consequence, assuming Celtic was required to register to do business in California (which Celtic disputes), when it registered to do business in December, 2007, the Loan Documents and Guaranty became fully effective and enforceable.

In short, Celtic's "failure" to qualify to do business in California in January, 2007 has no effect on the enforceability of the underlying Loan Documents or Guaranty, and certainly does not make the agreements illegal, void, or

1   unenforceable, nor relieve Cross-Claimants of their respective obligations.

2   Accordingly, all of the claims asserted by Cross-Claimants in the Cross-Claim and

3   Affirmative Defenses Nine and Sixteen are completely lacking in any possible

4   merit.

### 3.   Celtic was not Transacting "Intrastate Business" when it made the Loan to OCV

7   A foreign corporation is only required to register to do business in California

8   if it is conducting "intrastate" business.  The burden rests on the party challenging

9   a foreign corporation's qualification to show that the transaction in question arose

10   out of the conduct of intrastate business. *Gatto, supra*, at 1740.  Transacting

11   "intrastate business" means "entering into repeated and successive transactions of

12   its business in this state, other than interstate or foreign commerce."  Whether a

13   foreign corporation has engaged in "intrastate business," and more importantly,

14   whether the claims alleged in the action arise out of such business, depends on the

15   particular facts of the case. *Hurst v. Buczek Enterprises, LLC,* 870 F.2d 810, 819

16   (N.D. Cal. 2012).

17   In *Thorner v. Selective Cam Transmission Co.*, 180 Cal.App.2d 89 (1960)

18   the plaintiff (a corporation not qualified to do business in California) sued to

19   recover amounts due on promissory notes made to a California resident.  The Court

20   held that dismissal under Corporations Code section 6203 (now section 2203) was

21   improper because the defendant had failed to establish that, by making the loans,

22   the corporation was conducting intrastate business.  Specifically, the Court held

23   that, while negotiations for the loans occurred in California, the final acceptance of

24   the offer resulting from the negotiations was made outside the state.  Citing 20

25   C.J.S. *Corporations* §1839, the Court held: ". . . a foreign corporation is not doing,

26   transacting, carrying on, or engaging in business in a state, by making loans

27   outside the state to residents thereof, on applications obtained by agents of the

Page 18

28

1   corporation acting within the state, where the application is transmitted to the

2   foreign corporation at a point outside the state for acceptance or rejection, and the

3   loan is made payable outside the domestic state." *Id.* at 91.  The Court went on to

4   say that the defendant's claim that the notes were "made, executed and delivered"

5   in California was not enough, given that these facts were "perfectly consistent with

6   the fact that the notes may have been delivered in California by the maker

7   depositing them in the mail in California addressed to the foreign corporation at its

8   office outside the State. . . ." *Id.*

9        Also, in *XTC Investments, LLC v. Bluenose Trading, Inc.*, 2011 WL

10   3132102 (Cal. App. 2011), an unpublished decision, the Court held similarly.  The

11   plaintiff in XTC obtained a federal court judgment against two defendants on an

12   unpaid loan and personal guaranty.  It then sued in state court, alleging that the

13   defendants had concealed assets from creditors.  The defendants responded with a

14   motion to abate the action on the grounds XTC was not qualified to do business in

15   California.  Specifically, they claimed that the underlying promissory notes were

16   negotiated and signed in California, payments on the notes were made to XTC's

17   bank account in California, and the underlying federal court judgment was

18   obtained in California.  The Court denied the motion, and the appellate court

19   upheld its ruling.  While the Court's decision was ultimately based on the fact that

20   the action did not arise out of the underlying notes and guaranty, the Court noted

21   that the making of the loans and guaranty did not constitute "intrastate" business,

22   since they were payable, by their terms, in Nevada, and provided that disputes

23   arising under them were to be decided under Nevada law.

24        The same situation is present here.  Both the Note and the Business Loan

25   Agreement executed by OCV expressly provide that they have "been accepted by

26   Lender [Celtic] in the State of Utah."  (Complaint, Exhibits 5, 6.)  OCV also

27   agreed, on Celtic's request, "to submit to the jurisdiction of the courts of Salt Lake

28

1   County, State of Utah.  The Guaranty also specifically references Utah law,

2   including Utah's "one-action rule," and contains identical venue provisions, as

3   well as a provision stating that the Guaranty "has been accepted by Lender in the

4   State of Utah." (Complaint, Exhibit 10.) Moreover, *Corporations Code* section

5   191(c)(7) provides, in relevant part, that, "creating evidences of debt or mortgages,

6   liens or security interests on real or personal property" shall not constitute

7   conducting intrastate business.  That is precisely what Celtic did here.

8          Even if Celtic had not registered to do business in California on December

9   17, 2007, which is an undisputed fact, under these facts and the above authority, it

10  is clear that the Loan and Guaranty do not arise out of the transaction of intrastate

11  business by Celtic.  Accordingly, Celtic had no obligation to register to do business

12  in the State of California prior to making the Loan.

13             **4.      Celtic was Exempt from the Requirement that it Qualify to**

14                  **do Business in California at the Time the Loan was Made**

15         Even if Defendants could overcome all of the above-discussed problems

16  with their defenses and claims, they still cannot prevail against Celtic, because

17  Celtic is exempt from the requirement that it register to do business in California.

18         *Corporations Code* section 191(d) provides a specific exemption from the

19  qualification requirement for foreign lending institutions, such as Celtic.  That

20  subsection provides that such lending institutions are not considered to be

21  transacting business in California solely by reason of engaging in one or more of

22  the following activities:  "(1) the acquisition by purchase, by contract to purchase,

23  by making of advance commitments to purchase or by assignment of loans,

24  secured or unsecured, or any interest therein, if those activities are carried on from

25  outside this state . . .;" (3) the ownership of loans and enforcement of any loans by

26  trustee's sale, judicial process, or deed in lieu of foreclosure or otherwise; (4) the

27  modification, renewal, extension, transfer or sale of loans . . . if the activities are

28
CELTIC BANK CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR RULE 11 SANCTIONS AGAINST MARK MALAN, OCEANSIDE AT VINE, LLC, AND
MORGAN A. STEWART; DECLARATION OF ERIC D. DEAN IN SUPPORT THEREOF
8334-2012

1   carried on from outside this state by the lending institution; and . . . (7) The

2   engaging in activities necessary or appropriate to carry out any of the foregoing

3   activities."

4       All of these exemptions clearly apply to the underlying loan and to Celtic's

5   claims in this action, which seek judicial foreclosure on the Property and

6   enforcement Celtic's rights under the Loan documents.  Cross-Claimants seek to

7   sidestep this issue by alleging that Counter-Claim Defendant Ability Marketing

8   was "engaged in the business of brokerage of banking and relation of financial

9   services," and that it acted as a "broker for Celtic" in connection with the loan.

10  (Cross-Claim, ¶¶3, 16.)  However, under *Corporations Code* section 191(c) and

11  (d), a foreign corporation is not considered to be transacting intrastate business in

12  California when a subsidiary transacts intrastate business, or where sales are

13  effected through independent contractors, or where orders or solicited or procured,

14  whether by mail or through employees or agents or otherwise, where those orders

15  require acceptance outside the state.  As discussed above, the Loan was expressly

16  accepted in the State of Utah.  *See also Thorner, supra*, 180 Cal.App.2d at 91

17  (foreign corporation's agent's negotiation of loan in California does not constitute

18  the transaction of "intrastate" business).

19      **5.      Even if the Underlying Loan was Void or Voidable,**

20      **Defendants Signed a Change in Terms Agreement in 2010**

21      **Ratifying and Adopting Their Loan Obligations and the**

22      **Loan Documents As of That Date**

23      As alleged in the Complaint, on March 23, 2010, Malan, on behalf of OCV,

24  executed a Change in Terms Agreement with respect to the Loan.  The Change in

25  Terms Agreement extended the maturity date of the Loan, modified the applicable

26  interest rate, and referenced the principal amount of the loan of $825,000.00.  It

27

28

CELTIC BANK CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR RULE 11 SANCTIONS AGAINST MARK MALAN, OCEANSIDE AT VINE, LLC, AND
MORGAN A. STEWART; DECLARATION OF ERIC D. DEAN IN SUPPORT THEREOF
8334-2012

1  also contained a provision under which Defendants expressly reaffirmed their loan
2  obligations:

3       Except as expressly changed by this Agreement, *the terms of the*
        *original obligation or obligations, including all agreements evidenced or*
4       *securing the obligation(s), remain unchanged and in full force and effect.*
5  Complaint, ¶13c; Exhibit 7 (emphasis added.)

6       This acknowledgment of the original loan obligations and loan documents
7  gives rise to a new enforceable promise, supported by both a moral obligation,
8  which is regarded as sufficient consideration for the agreement, and agreement to
9  extend the maturity date by roughly three (3) years. *See, e.g., General Credit*
10 *Corp. v. Pichel,* 44 Cal.App.3d 844, 848 (1975) (reaffirmation of an otherwise
11 unenforceable obligation creates a new, fully enforceable, contractual obligation);
12 *Dow v. River Farms Co. of California,* 110 Cal.App.2d 403, 410 (1952) (where
13 past legal obligation is unenforceable, a subsequent promise to pay is enforceable).

14      Accordingly, even if Cross-Claimants could somehow establish that the
15 original Loan Documents were void or voidable due to Celtic's failure to register
16 to do business in California, their reaffirmation of their loan obligations <u>after</u>
17 Celtic's qualification makes those obligations fully enforceable. The Cross-Claim
18 is patently frivolous.

19      **6.    All Cross-Claimants' Claims are Barred by the Applicable**
20             **Statute of Limitations**

21      As discussed above, Celtic contends that Cross-Claimants have no right to
22 any affirmative relief against it based on its failure to register to do business in
23 California prior to making the Loan. However, even if Cross-Claimants could
24 overcome this problem, all of their claims are barred by the applicable statute of
25 limitations.

26      Cross-Claimants seek damages against Celtic for breach of fiduciary duty,
27 fraudulent inducement, negligent misrepresentation, and violation of Business &

28

Professions Code section 17200.[1]  The statute of limitations for these claims varies, but the longest is four years.[2]  Here, the loan documents were executed in January 2007 – well over five years before this action was filed.  The statute of limitations has therefore long since run.

In addition, the "discovery rule" provides no assistance to Cross-Claimants or Stewart and  Stewart most certainly knew or should have known this.  Under the "discovery rule," for some claims, *e.g.*, fraud, the limitations period commences when a party has notice of information or circumstances to put a reasonable person on inquiry, *i.e.*, when the party suspects or should suspect that its injury was caused by wrongdoing.  *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110 (1988); *Fox v. Ethicon Endo-Surgery, Inc,.* 35 Cal.4th 797, 807 (2005) (statute runs when plaintiff has a reason to at least suspect that a type of wrongdoing has injured them).

Cross-Claimants make a thin attempt to invoke this rule by alleging in their Cross-Claim that they "only recently learned of Defendants [*sic*] conduct. . . ." (Cross-Claim, ¶11.)  The problem for Cross-Claimants is that Celtic's corporate

---

[1] Cross-Claimants also have alleged a claim for Violation of Corporations Code Section 191.  However, that section does not provide a private right of action and Cross-Claimants' claim for violation of that section is barred as a matter of law on that ground.  *See Moradi-Shalal v. Fireman's Fund Ins. Companies* 46 Cal.3d 287, 305 (1988) (where Legislature does not express an intent to provide a private right of action or expresses no intent either way, directly or impliedly, there is no private right of action).

[2] The limitations period for actions for breach of fiduciary duty is four years (Code Civ. Proc. §343; *David Welch Co. v. Erskine & Tulley* (1988) 203 Cal.App.3d 884, 893); the period for fraud is three years (Code Civ. Proc. §338(d); the period for actions for negligent misrepresentation is two years (Code Civ. Proc. §339(1); *Ventura County National Bank v. Macker* (1996) 49 Cal.App.4th 1528, 1531), and the limitations period for actions alleging violations of Business & Professions Code 17200 is four years (Bus. & Prof. Code §17208).

1  status and qualification to do business in California was, and always has been, a

2  matter of readily accessible public record.  As the Court noted in *Kline v. Turner,*

3  87 Cal.App.4th 1369 (2001), "constructive and presumed notice or knowledge are

4  equivalent to knowledge.  So, when the plaintiff has notice or information of

5  circumstances to put a reasonable person on inquiry, or has the opportunity to

6  obtain knowledge from sources open to [her] investigation (such as public records

7  or corporation books), the statute commences to run." *Id.* at 1374. *See also*

8  *Parsons v. Tickner,* 31 Cal.App.4th 1513, 1525 (1995).

9  Here, Cross-Claimants had actual notice that Celtic was a Utah corporation

10  when they signed the Loan Documents and Guaranty in January 2007, and they

11  had constructive notice of the fact that Celtic was not registered to do business in

12  California at the same time, based on information contained in the records of the

13  Secretary of State – the very same records they apparently "stumbled across" after

14  this lawsuit was filed.  Accordingly, the limitations period for all of Cross-

15  Claimants' claims began to run in January 2007, and expired, at the very latest,

16  four years later, in January 2011.

## III.   CONCLUSION

18  Based on the foregoing, Celtic respectfully requests that its Motion for

19  sanctions be granted, and that: (1) the Cross-Claim be dismissed as against Celtic;

20  and (2) reasonable attorneys' fees in the amount of $28,069.51 awarded, as more

21  particularly set forth in the Dean Declaration submitted concurrently herewith.

22  Date:  September 18, 2013             THE WOLF FIRM, A LAW
                                          CORPORATION
23

24

25                                        By: */s/ Eric D. Dean*
                                          Eric D. Dean, Esq.
26                                        Attorneys for Plaintiff and Counter-
                                          Claim Defendant, CELTIC BANK
27                                        CORPORATION, a Utah corporation

Page 24
28  CELTIC BANK CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
    MOTION FOR RULE 11 SANCTIONS AGAINST MARK MALAN, OCEANSIDE AT VINE, LLC, AND
    MORGAN A. STEWART; DECLARATION OF ERIC D. DEAN IN SUPPORT THEREOF
    8334-2012

## DECLARATION OF ERIC D. DEAN, ESQ.

1.     I am an attorney at law duly licensed to practice before this Court, and a Senior Attorney at The Wolf Firm, A Law Corporation, counsel of record for Plaintiff and Cross-Claim Defendant CELTIC BANK CORPORATION ("Celtic"), a Utah corporation, licensed to do business in California as of December 17, 2007. The following information is based on my own personal knowledge and if called as a witness in this action, I would and could testify as set forth below.

2.     This declaration is submitted in support of Plaintiff's Motion for Sanctions against Cross-Claimants Oceanside at Vine, LLC ("OCV") Mark Malan, and their counsel, Morgan A. Stewart, Esq. and his Firm Manly, Stewart and Finaldi formally known as Manly and Stewart.  Mark Malan and Oceanside at Vine, LLC shall sometimes hereinafter be referred to collectively as "Defendants" or "Cross-Claimants."

3.     On May 6, 2013, Cross-Claimants filed a complaint in the Orange County Superior Court  entitled Oceanside At Vine and Mark Malan v. Celtic Bank Corporation, Orange County California Superior Court Case No. 30-2013-000647881 (the "State Court Action")against Celtic asserting six (6) causes of action against Celtic: (1) Violation of California Corporations Code Section 191; (2) Breach of Fiduciary Duty; (3) Fraudulent Inducement; (4) Negligent Misrepresentation; (5) Violation of Business and Professions Code Section 17200; and (6) Declaratory Relief ("State Court Complaint").  The State Court Complaint was related to the same subject matter as Celtic's Complaint in this action and also based entirely on the unsupportable theory that because Celtic was not registered to do business in California when the loan that is the subject of this Action was made the loan and loan documents are void or voidable and enforceable thereby relieving the borrower and guarantor on the Loan of any obligation to make any payments

1   on the loan.  The Court is asked to take judicial notice of the filing of the State

2   Court Complaint, a copy of which is attached hereto as Exhibit 1(a).

3       4.      The State Court Complaint was filed despite Celtic having filed its

4   Complaint in the within Action on May 3, 2013.  The Court is requested to take

5   judicial notice of the filing date of Celtic Complaint in the within Action.

6       5.      On May 21, 2013, Declarant wrote Counsel Stewart explaining that

7   the State Court Complaint must be dismissed and how and why the State Court

8   Complaint was without any factual or legal basis and that its continued prosecution

9   would constitute sanctionable conduct.  This correspondence also informed

10  Counsel that Celtic planned to move for sanctions under California Code of Civil

11  Procedure section 128.7 (the California analogue version of Rule 11) if the

12  baseless claims were not voluntarily withdrawn.  A true and correct copy of my

13  letter of May 21, 2013, is attached hereto as Exhibit "1."

14      6.      On June 11, 2013, I received written discovery from counsel Stewart

15  propounded on behalf of Cross-Claimants.  The discovery was wrongfully served

16  as it was served prior to the Parties' Rule 26(f) meeting, was burdensome, intrusive

17  and broadly defined written discovery directed to other loans made or considered

18  by Celtic in California.  The written discovery was withdrawn by Stewart only

19  under threat by Declarant that Celtic would seek Court intervention if the

20  discovery was not withdrawn. On June 13, 2013, I made written demand on

21  Stewart to withdraw this discovery informing Stewart that sanctions and a

22  protective order would be sought if he failed to do so.  A true and correct copy of

23  Declarant's June 13, 2013 email to Mr. Stewart is attached hereto as Exhibit "2."

24      7.      All material underlying facts of this Action are admitted in

25  Defendants' Answer to the Celtic Complaint, as well as in a Statement of

26  Undisputed Facts for All Purposes entered into by the Parties.  True and correct

27  copies of Defendants' Answer to Celtic's Complaint and the Statement of

28

1 Undisputed Facts for All Purposes are attached hereto as Exhibits "3" and "4,"

2 respectively.

3    8.    On June 7, 2013, Declarant exchanged several e-mails with counsel

4 for Cross-Claimants and again stated that Plaintiff would seek sanctions against

5 counsel's firm and clients if the State Court Complaint was not dismissed.

6 Declarant also reiterated that the State Court Complaint was frivolous on its face

7 and that its claims fly in the face of both California statutory law and precedent.

8 True and correct copies of my June 7, 2013, e-mails are attached hereto as Exhibit

9 "5."

10    9.    On June 11, 2013, Defendants dismissed the State Court Complaint

11 without prejudice.  Also on that date, Cross-Claimants filed an answer to Celtic's

12 Complaint ("Answer").  Cross-Claimants June 11, 2013 pleading also included a

13 Cross-Claim against Celtic based on identical allegations, and asserting the

14 identical claims for relief as those asserted by the State Court Complaint.  ("Cross-

15 Claim").

16    10.    Like the State Court Complaint, the Cross-Claim was and  is founded

17 on a single universal and untenable allegation: that Celtic was not authorized to

18 transact business in California at the time it made the Loan to OCV, and,

19 accordingly, that the BLA, the Note, and the Guaranty are void or voidable despite

20 Celtic having qualified to do business in California on December 17, 2007.

21    11.    On June 12, 2013, the day after receiving the Answer and Cross-

22 Claim, Declarant wrote an e-mail to Counsel stating that Plaintiff would proceed

23 with a Rule 11 sanctions motion unless the claims were voluntarily dismissed.

24 Declarant also requested a meet and confer with counsel so we could discuss these

25 issues.  A true and correct copy of the June 12, 2013, e-mail to counsel is attached

26 hereto as Exhibit "6."

27

28

12.     On June 18, 2013, Declarant met and conferred with counsel Stewart via telephone.  During that call Declarant  repeated Plaintiff's position that the Cross-Claim, and all its claims for relief have no basis in law or fact, and, in fact, are in direct contradiction with the relevant California statutes and were otherwise barred and asked that he dismiss the Counter-Claim so that a Motion to Dismiss would not be required. I told him that if it were filed, sanctions would be sought. Counsel Stewart told me that the Cross-Claim would not be dismissed and to date he has refused to do so instead threatening expansive discovery and motions directed at these matters as to which as a matter of law his clients cannot possibly prevail. (*See, e.g.,* Exhibit "4" attached hereto.)

13.     Because the Cross-Claim is not legally supportable under existing law, since May 21, 2013, I have made numerous attempts to educate counsel Stewart of the reasons the position he espouses are not germane to this Action nor claims his clients can prevail as to.

14.     On August 22, 2013, I received a Request for Production of Documents and Written Interrogatories from Stewart propounded on behalf Cross-Claimants.  The discovery served is nearly identical to the discovery improperly served by Cross-Claimants on June 11, 2013, and later withdrawn.  Like the earlier served set, the discovery requests are burdensome, intrusive, broadly defined, and directed to other loans made or considered by Celtic in California.  Specifically, Interrogatory numbers 12-14 and 17-19, as well as Requests for Production numbers 22-27 directly and improperly seek information totally unrelated to the Loan at issue in this action.  True and correct copies of the discovery I received on August 22, 2013, are attached hereto as Exhibits "7" and "8."

15.     On August 22, 2013, I exchanged several e-mails with Stewart related to the service and content of this improper discovery.  I informed Stewart that the discovery was burdensome, oppressive, and irrelevant as it related to Celtic's

1   business practices in California.  I also informed Stewart that all the issues that are

2   the subject of the Requests for Production have been admitted by Counter-

3   Claimants' through their Answer and Statement of Stipulated Facts.  I requested

4   that Stewart withdraw the discovery.  Stewart rejected my request.  I responded

5   that Celtic would seek Rule 11 sanctions against both Stewart and Cross-Claimants

6   as a consequence of their continued position despite overwhelming authority to the

7   contrary.  Stewart responded that the parties would just have to wait for the Court's

8   ruling on Celtic's Motion to Dismiss.  A true and correct copy of the June 22,

9   2013, e-mail chain between Stewart and myself counsel is attached hereto as

10   Exhibit "9."

11        16.    Attached hereto as Exhibit "10" is a true and correct copy of a letter

12   dated August 23, 2013, that was transmitted to counsel Morgan by e-mail and first

13   Class Mail along with a copy of this Motion.

14        17.    Plaintiff's attorneys at The Wolf Firm who have expended time in

15   relation to the Cross-Claim are John T. Madden, a 2008 graduate of Loyola Law

16   School, Los Angeles whose hourly rate for this matter is $250.00, and Eric D.

17   Dean, a 1973 graduate of the UCLA Law School Order of the Coif who has been

18   practicing for 40 years in the area of real estate secured litigation and whose hourly

19   rate for this matter is $330.00 and a contract attorney, Tracy Anielski who is a

20   1989 graduate of Western State University Law School and whose billable rate to

21   clients if $300.00 per hour.  Ms. Anielski works with The Wolf Firm on a contract

22   basis and assists the firm with complex law and motion matters.  These hourly

23   rates are reasonable in light of the attorneys' experience and skill, and the

24   prevailing market rates for business, real estate and banking litigation counsel in

25   Irvine, California where The Wolf Firm is located.  Moreover, the legal fees and

26   hourly rates of the attorneys who performed services in this matter on behalf of

27   Plaintiff fall well within the range of rates charged by attorneys with their

28

background and experience with cases involving Financial Services litigation and with legal issues similar to those presented in this matter.

18.     The total time spent and the charges incurred by Plaintiff related to the Ninth and Sixteenth Affirmative Defenses and the Cross-Claim, and this Motion are shown collectively in true and current copies of pertinent client billings redacted only for privileged matters and matters that are not viewed as germane to this Motion.  These billings to date related to this Motion total $28,069.51.  True and correct copies of redacted invoices are attached hereto as Exhibit "11."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on September 18, 2013, at Irvine, California.

Eric D. Dean

CELTIC BANK CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR RULE 11 SANCTIONS AGAINST MARK MALAN, OCEANSIDE AT VINE, LLC, AND MORGAN A. STEWART; DECLARATION OF ERIC D. DEAN IN SUPPORT THEREOF
8334-2012